FILED
2025 Mar-28 AM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| DORIVIENDO JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 4:23-cv-1388-JHE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Doriviendo Jones ("Jones") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Supplemental Security Income ("SSI") and a period of disability and disability insurance benefits ("DIB"). Jones timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On April 4, 2021, Jones filed an application for a period of disability and DIB, and protectively filed an application for SSI. (Tr. 139). For each, Jones alleged disability beginning August 1, 2020. (*Id.*) The Commissioner denied Jones's claims on October 30, 2021, and denied

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

them again upon reconsideration on January 6, 2022. (*Id.*) Jones timely requested a hearing before an Administrative Law Judge ("ALJ"). Following a hearing on July 7, 2022 (tr. 77–103), the ALJ entered an unfavorable decision denying Jones's application for benefits in a decision dated July 21, 2022. (Tr. 139–69). Jones sought review by the Appeals Council, and on November 1, 2022, the Appeals Council vacated the ALJ's decision, and remanded the matter for resolution of legal errors. (Tr. 170–74). The ALJ held another hearing on April 3, 2023 (tr. 48–75) and on May 26, 2023, issued another decision finding Jones not disabled (tr. 14–46). Jones again sought review by the Appeals Council, but it denied his request for review on August 24, 2023. (Tr. 2–6). On that date, the ALJ's decision became the final decision of the Commissioner. On October 13, 2023, Jones initiated this action. (Doc. 1).

Jones was fifty years old on his alleged onset date. (Doc. 10-8 at 14). He has past relevant work as a drill sergeant or training instructor in the U.S. military. (Doc. 10-8 at 4).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[2] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Social Security Administration ("SSA");

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the five-step evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Jones had not engaged in substantial gainful activity since his alleged onset date. (Tr. 20). At Step Two, the ALJ found that Jones has the following severe impairments: left-shoulder acromioclavicular joint arthrosis, status-post shoulder surgery, cervical C4–5 joint hypertrophy and diffuse disc bulge, gout, dysthymic disorder, anxiety disorder, and post-traumatic stress disorder (PTSD). (Tr. 20). At Step Three, the ALJ found that Jones does not

have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 20).

Before proceeding to Step Four, the ALJ determined Jones's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments.  *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Jones has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations: the claimant can occasionally climb, stoop, kneel, crouch, or crawl; he can occasionally reach overhead with the bilateral upper extremities; he can frequently handle and finger bilaterally; he should avoid exposure to industrial fumes, dusts, gases, poor ventilation or other severe pulmonary irritants; he should avoid exposure to hazards such as unprotected heights, moving mechanical parts or operating motor vehicles; he can understand, remember, and carry out detailed but not complex instructions; and he can occasionally interact with the public and coworkers.

(Tr. 25).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that Jones is unable to perform his past relevant work.  (Tr. 37).  At Step Five, the ALJ found that, considering Jones's age, education, work experience, and RFC, Jones is able to perform jobs that exist in significant numbers in the national economy.  (Tr. 38).  Therefore, the ALJ determined Jones has not been under a disability from August 1, 2020, through the date of the decision.  (Tr. 39).  Thus, the ALJ denied his claim.  (Tr. 39).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  The court,

however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Jones's argument centers around chronic joint pain and swelling associated with gout. (*See* Doc. 17). He asserts that the ALJ's RFC assessment is erroneous because the ALJ did not address how limitations stemming from gout factored into the RFC assessment. According to Jones, his gout flare-ups would impede his ability to be on his feet for very long for days at a time. (Doc. 17 at 9). Jones argues that this limitation is incongruous with an RFC of light work, because even light work requires the individual to do a good deal of walking or standing.[4] (*Id.*).

Step Two of the regulatory framework is "a threshold inquiry" under which only "trivial impairments" are rejected; a claimant "need show only that her impairment is not so slight and its effect is not so minimal" that it would not "clearly be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). As such, an impairment found to be "severe" at Step Two does not always result in functional limitations in an RFC. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009). Nevertheless, "*[c]onsideration* of all impairments – severe and non-severe – is required when assessing a claimant's RFC." *Arce v. Comm'r of Soc. Sec.*, No. 23–11315, 2024 WL 36061 at *2 (11th Cir. January 3, 2024) (citing *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019)) (emphasis added). The ALJ did so here.

The ALJ noted in her decision at Step Two that gout is one of Mr. Jones's severe impairments and "cause[s] significant limitation in the claimant's ability to perform basic work

---

[4] Notably, Jones's argument is *not* that the ALJ improperly discounted his testimony about his subjective symptoms. Instead, Jones argues that the ALJ did not address his gout *at all* in formulating the RFC. (*See* doc. 17 at 8).

activities. . ." (Tr. 20). She further noted that basic work activities include but are not limited to "walking, standing, sitting, lifting, pushing, pul[l]ing, reaching, carrying, or handling. . ." (Tr. 20, Fn. 2). The ALJ went on to discuss Jones's testimony regarding his gout, noting that he "testified that he has ankle and foot swelling due to gout and is down for about a week due to pain." (Tr. 26). She elaborated:

> The claimant testified that he has episodes of gout at least once a month that keep him in bed. He stated that they last from three to seven days . . . He asserted problem[s] with his ankles, feet, knees and left shoulder and also indicated a history of problems with his right shoulder. The claimant asserted that gout and arthritis were his major issues, and he asserted constant pain on his left side and intermittent pain on his right side. He asserted a generally "6/10" pain-severity level and stated that he also experienced flare-ups of his gout on his left side at least once per week. . . . He asserted being able to stand for at most five minutes, after which he would experienc[e] pain and swelling in his feet.

(Tr. 26).

The ALJ went on to discuss Jones's self-reported activities of daily living, which include taking his daughter to and from school, cleaning, cooking, and sometimes taking out the trash. (Tr. 26–27). Jones did report that on some days his gout interfered with these tasks by making it more difficult for him to walk and that he had been issued a cane less than a month prior to the hearing and had been using crutches for more than a year. (Tr. 27). He also testified that he was on weekly medication for his gout. (Tr. 27). The ALJ noted, however, that Jones's reports of his limitations due to gout were inconsistent with underlying medical records:

> Throughout the medical record, the claimant has reported engaging in activities, such as home projects. He stated that he had also helped unload a motorcycle. In September 2021, the claimant reported he had been engaging with his neighbor in the house regarding projects and was in the process of buying a bike. On December 14, 2021, he reported that he enjoyed riding his bike. On January 20, 2022, the claimant report that he had obtained a treadmill, and felt more active, and he was also riding his bike more often.

> In his *Function Report*, the claimant asserted being able to walk fifteen to twenty minutes before needing to rest for five to ten minutes. . . . He reported preparing his own meals and performing certain household chores including ironing ("minimally"). He acknowledged being able to go out alone and to drive and reported either walking or driving a car and shopping in stores and by mail for groceries . . . He reported regularly going to gas stations and shopping for groceries. . . . The claimant reported using crutches, walker, cane, brace/splint, and glasses/contact lenses but stated that all of those had been "recommended."

(Tr. 27–28) (internal citations omitted). Notwithstanding Jones's reports, though, the ALJ found that "the time-relevant medical evidence, though it documents the claimant's history of left-shoulder acromioclavicular joint arthrosis, status-post shoulder surgery, cervical C4–5 joint hypertrophy and diffuse disc bulge, gout, dysthymic disorder, anxiety disorder, and post-traumatic stress disorder (PTSD), is nonetheless no more than partially consistent with the claimant's allegations of disability, as it fails to substantiate limitations to the degree that he asserts or to document a level of functional restriction in compatible with sustained work activity and instead establishes the degree of functionality herein determined for the claimant." (Tr. 28).

The ALJ went on to discuss Jones's treatment records from March 2020 through July 2022. (Tr. 28–33). These included normal findings upon multiple evaluations. For example, the ALJ cited a September 2020 treatment visit "for multiple musculoskeletal issues" at which Jones was noted to have a normal balance and gait despite left knee localized swelling and tenderness. (Tr. 29, 1451–52). Jones was ultimately referred to orthopedics for shoulder and elbow issues. (Tr. 29). Jones continued to have normal ambulatory findings on subsequent treatment visits for shoulder issues until March 2021, when Jones underwent arthroscopy on his left shoulder. (*E.g.*, tr. 29–32, 1007, 1207–08, 1263, 6042–43). The ALJ also noted that Jones was able to ambulate normally with intact heel, toe, and tandem walk on January 4, 2022, when Jones sought treatment

for left arm pain and numbness.  (Tr. 32–33, 5794).  A physical examination on January 5, 2022, showed the same.  (Tr. 33, 5793–95).

Although Jones argues that the ALJ did not properly consider his limitations resulting from his gout, the ALJ opinion shows that she specifically evaluated both the record and Jones's testimony regarding how his gout limited him.  Based on the record evidence, including Jones's reported activities of daily living, the ALJ necessarily determined that Jones's gout did not present disabling limitations beyond what she included in the RFC.  Jones mainly points to contrary evidence in the record (*see* doc. 17 at 9–10), but the court's role in reviewing the ALJ's decision is not to weigh how much evidence supports each side's position.[5]  While Jones considers the evidence concerning his gout-related limitations to be "undisputed" (doc. 19 at 2), the ALJ's opinion belies this by specifically pointing to evidence undermining those limitations.

Jones also suggests that the ALJ improperly based her RFC on the findings of state agency reviewing physicians Drs. Fizzeh Nelson-Desiderio and Laurence Ligon.  (Doc. 17 at 10).  In Jones's view, each physician opined that Jones's only severe impairment was shoulder pain, and neither accounted for gout.  (*Id.*).  Jones is incorrect.  Both doctors identified gout as one of Jones's underlying conditions.  (Tr. 106, 109–10, 120, 124–25).  While neither specifically attributed any of the limitations they imposed to gout, the evidence does not support that they did not account for it at all.  And, as the Commissioner points out (doc. 18 at 13), the ALJ's opinion shows that she

---

[5] Even some of the evidence Jones cites does not support disabling limitations from gout. For example, Jones states that his medical records "document diffuse edema/swelling, 'significant tenderness,' abnormal gait, limited balance, and reduced range of motion." (Doc. 17 at 9). But during a January 11, 2021, visit Jones cites as evidence for this, Jones reported he was "much improved" after a gout attack and that it had resolved with medication and treatment. (Tr. 1078). Jones was also observed on examination to have general pain, but he could "perform all movements." (Tr. 1078).

independently evaluated the evidence and did not simply rubber stamp the RFCs provided by Drs. Nelson-Desiderio and Ligon.

The mere existence of a severe impairment does not automatically mean that the impairment will result in an adjustment to the RFC.  *See McDaniel*, 800 F.2d at 1031; *Castel*, 355 F. App'x at 264. The ALJ's opinion is sufficient for the court to determine that she declined to include specifically gout-related limitations in the RFC not because she overlooked the existence of Jones's gout, but because she determined that Jones's gout did not pose limitations beyond those contained in the RFC.  Accordingly, Jones has not shown reversible error.

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Jones's claim for SSI and a period of disability and DIB is **AFFIRMED**.  A separate order will be entered.

DONE this 28th day of March, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE